UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

CRAIG PETERSEN,

**REPORT AND
RECOMMENDATION**

                    Plaintiff,

11-CV-116
(GTS/VEB)

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
———————————————————————————

## I. INTRODUCTION

In January of 2008, Plaintiff Craig Petersen applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since January of 2004.  The Commissioner of Social Security granted Plaintiff's application, in part, finding that Plaintiff became disabled under the Social Security Act beginning on May 22, 2010, but that Plaintiff had not been disabled prior to that date.

Plaintiff, by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, commenced this action seeking judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

In January of 2008, Plaintiff applied for SSI benefits and DIB, alleging that he had been unable to work since January 1, 2004. (T at 91-93, 94-98).[1]  The Commissioner initially denied the applications and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on April 9, 2010, before ALJ Richard West.   (T at 24). Plaintiff appeared in Binghamton, New York; the ALJ presided via videoconference from Newark, New Jersey.  (T at 10).  Plaintiff appeared *pro se* and testified.  (T at 29-49).  Testimony was also received from two witnesses, Christina Boyea and Linda Jumper. (T at 50-56).

On June 22, 2010, the ALJ issued a written decision finding that Plaintiff became disabled under the Social Security Act on May 22, 2010, but had not been disabled prior to that date.  (T at 10-17).  The ALJ's decision became the Commissioner's final decision on January 10, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, by and through Peter A. Gorton, Esq., commenced this action by filing a Complaint on February 2, 2011. (Docket No. 1).  The Commissioner interposed an Answer on June 1, 2011.  (Docket No. 8).  Plaintiff filed a supporting Brief on October 5, 2011. (Docket No. 14).  The Commissioner filed a Brief in opposition on October 31, 2011. (Docket No. 16).  Plaintiff requested and received permission to file a reply brief on November 19, 2011. (Docket No. 19).

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

2

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011 (the "date last insured") and had not engaged in substantial gainful activity since January 1, 2004, the alleged onset of disability date. (T at 12).

The ALJ determined that Plaintiff had the following impairments considered "severe" under the applicable Social Security Act Regulations (the "Regulations"): degenerative disc

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

disease of the lumbar and cervical spines; bilateral carpal tunnel syndrome; migraines; hypothyroidism; hemorrhoids; osteoporosis; history of alcohol dependence; insomnia; depression; panic disorder without agoraphobia; and personality disorder. (T at 12-14).

However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 14).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work, except that he could not climb ladders/ropes/scaffolds and could perform other postural functions only occasionally. (T at 14). The ALJ determined that Plaintiff could frequently handle and finger objects and could perform simple unskilled work. (T at 14-15). The ALJ concluded that Plaintiff could not perform any of his past relevant work. (T at 15).

The ALJ noted that between the alleged onset date (January 1, 2004) and May 22, 2010, Plaintiff was a "younger individual" (45-49 years old) as defined under the Regulations. (T at 15). The ALJ found that on May 22, 2010, Plaintiff's age classification changed to "an individual closely approaching advanced age" (i.e. a person 50-54 years old) pursuant to 20 CFR § 404.1563 and 416.963. (T at 15).

Considering Plaintiff's residual functional capacity, age, education (high school), and work experience, the ALJ determined that, prior to May 22, 2010, Plaintiff was able to perform jobs that exist in significant numbers in the national economy. (T at 16). Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (January 1, 2004) through May 22, 2010, and was therefore not entitled to benefits with regard to that period. (T at 16).

However, the ALJ determined that as of May 22, 2010, considering Plaintiff's age, education, work experience, and residual functional capacity, there were not jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 16).   As such, the ALJ found that Plaintiff became disabled as of that date and was entitled to benefits thereafter. (T at 16-17).

As noted above, the ALJ's decision became the Commissioner's final decision on January 10, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed to the extent it provides that Plaintiff was not disabled prior to May 22, 2010.  He offers three (3) principal arguments in support of his position.  First, Plaintiff argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff contends the ALJ should have consulted a vocational expert. Each argument will be addressed in turn.

### a.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

7

claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the Regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

### i.    Physical Impairments

As discussed above, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work, except that he could not climb ladders/ropes/scaffolds and could perform other postural functions only occasionally. (T at 14).   The ALJ determined that Plaintiff could frequently handle and finger objects. (T at 14-15)

For the following reasons, this Court finds a remand is necessary for further development of the record and clarification concerning the ALJ's assessment.

The ALJ afforded "great weight" to the opinion rendered by Dr. Justine Magurno, a consultative orthopedic examiner, in June of 2010. (T at 15). However, Dr. Magurno assessed "marked limitations for walking, standing, bending, pushing, pulling, lifting, and carrying." (T at 221).   Dr. Magurno also opined that Plaintiff would have moderate limitations for sitting an reaching.  (T at 221).  These findings are at odds with the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work prior to May 22, 2010. See SSR 96-9p ("Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally

8

total about 6 hours of an 8-hour workday.").

The Commissioner defends the ALJ's decision by (1) pointing to other evidence in the record supporting the RFC determination and (2) noting that Dr. Magurno's opinion was rendered after the date on which the ALJ found Plaintiff disabled.  This Court finds these arguments unpersuasive for the following reasons.

First, this Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

While there is some evidence in the record supportive of the ALJ's RFC assessment,[4] the ALJ afforded "great weight" to Dr. Magurno's opinion.  However, Dr. Magurno's opinion did not support the RFC assessment.  Moreover, the ALJ failed to recognize the contradiction and failed to note other evidence more credible than Dr. Magurno's opinion.  This Court cannot re-weigh the evidence on the ALJ's behalf or create a post-hoc explanation for the fact that he gave great weight to an opinion that contradicted his RFC assessment.

Second, the Commissioner's suggestion regarding the timing of Dr. Magurno's report

---

[4]Dr. Pranab Datta performed a consultative examination in April of 2008 and opined that he had "mild limitations for prolonged sitting, standing, walking, or climbing." (T at 153).

is unpersuasive.  The Commissioner contends that Dr. Magurno's report is not inconsistent with the RFC assessment because the doctor's opinion was rendered  on June 3, 2010, which was after May 22, 2010 (the date on which the ALJ determined that Plaintiff became disabled).  In support of this argument, the Commissioner points (accurately) to indications that Plaintiff's condition grew more severe over time. (T at 201, 218).   Thus, the Commissioner seeks to reconcile the ALJ's decision to accord "great weight" to Dr. Magurno's report (which assessed several marked functional limitations) with the RFC finding (which found an ability to perform sedentary work), by suggesting that Plaintiff's limitations increased to disabling severity during the twelve (12) days between May 22, 2010 and June 3, 2010.

However, the ALJ did not find Plaintiff disabled as of May 22, 2010, because his limitations reached disabling severity as of that date; rather, the ALJ concluded that Plaintiff became disabled on that date *by operation of law* because he turned fifty. (T at 15).  In other words, Plaintiff was found to be disabled simply because of a change in his age category under the Social Security Regulations; not because the ALJ found that any material change occurred with respect to Plaintiff's condition between May 21st and May 22nd of 2010.  Indeed, the ALJ did not change his RFC determination for the period following May 22, 2010 (i.e. he still believed Plaintiff could perform sedentary work even after that date); rather, the disability designation changed because the applicable Medical-Vocational Rule (Rule 201.14) directed a finding of disabled for a person limited to sedentary, unskilled work, "closely approaching advanced age."

Moreover, there is no evidence in the record to support the Commissioner's suggestion that Plaintiff's condition became dramatically more disabling during the twelve-

10

day period between the date of disability and the date of Dr. Magurno's assessment.

As such, we are left where we began - with the ALJ concluding, on the one hand, that Plaintiff was capable of performing sedentary work while affording "great weight" to a medical opinion contradicting that finding on the other.

It is clear that, as the ALJ recognized, Plaintiff's condition worsened between April of 2008 and June of 2010. (T at 15, 195, 201, 210, 214, 218).  A finding that Plaintiff was not disabled prior to April of 2008 might be supported by substantial evidence, including (in particular) Dr. Datta's consultative examination, which indicated that Plaintiff's limitations were mild in degree as of April 2008. (T at 150-54).  However, it appears that Plaintiff's limitations increased in severity following the April 2008 examination, ultimately resulting in Dr. Magurno's conclusion that Plaintiff had "marked limitations for walking, standing, bending, pushing, pulling, lifting, and carrying" and "moderate limitations" for sitting and reaching. (T at 221).  For the reasons outlined above, this Court is not persuaded by the Commissioner's *post-hoc* suggestion that Plaintiff's limitations became disabling on May 22, 2010.  A remand is therefore required to determine the date of disability onset based upon the medical record.  Dr. Magurno may be able to provide a retrospective assessment concerning the estimated onset of marked limitations.

### ii.    Psychiatric Impairments

The ALJ found that Plaintiff's depression, panic disorder, and personality disorder were severe impairments. (T at 12).  However, the ALJ determined that Plaintiff retained the RFC to perform "simple unskilled work" at all relevant times. (T at 14).  In support of this finding, the ALJ gave "significant weight" to the consultative psychiatric examination performed by Mary Ann Moore, a New York State licensed psychologist, in April of 2008.

11

Dr. Moore opined that Plaintiff could follow and understand simple directions and instructions; perform simple rote tasks; and perform such tasks consistently under supervision. (T at 147).

However, Dr. Moore also found that Plaintiff's ability to maintain attention and concentration was impaired. (T at 147). In addition to difficulties completing and learning complex information, Plaintiff appeared to be "impulsive in nature," which Dr. Moore found could "cause problems sometimes in relating adequately with others as well, making appropriate work schedule [*sic*], and maintaining a regular work schedule." (T at 147).

The ALJ afforded "significant weight" to Dr. Moore's assessment, but did not reconcile that assessment with his conclusion that Plaintiff could perform the basic mental demands of competitive, remunerative, unskilled work on a sustained basis. This Court finds that a remand is required to address this inconsistency. Moreover, as discussed below, given Dr. Moore's findings, the ALJ should have consulted a vocational expert.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In the present case, the Commissioner defends the ALJ's decision on two grounds. First, the Commissioner points to the assessment of "M. Morog," a non-examining State Agency review consultant, who opined that "[a]side from some mild impairment in attention/concentration/memory," Plaintiff's presentation was "fairly unremarkable." (T at

12

173).  However, this consultant also assessed moderate limitations with regard to social interaction, which contradicts the suggestion that Plaintiff's impairments only related to attention, concentration, and memory. (T at 166, 172).  Moreover, while reports from non-examining consultants are entitled to *some* evidentiary weight, they cannot constitute substantial evidence. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009); McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009). Further, in this case, the ALJ afforded "significant" weight to Dr. Moore's consultative examination, which indicated more significant limitations than assessed by the non-examining consultant. (T at 15).

Second, the Commissioner suggests that Plaintiff's failure to seek psychiatric treatment supports the ALJ's conclusion.  However, faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

Accordingly, this Court finds that a remand is required for reassessment of Plaintiff's mental impairments and, as set forth below, consultation with a vocational expert.

### b.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See

Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.      [Plaintiff's] daily activities;

14

2.      The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3.      Precipitating and aggravating factors;

4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified that he has a decreased attention span and suffers from migraine headaches. (T at 31, 38). He experiences pain in his legs, neck, and back; along with carpal tunnel syndrome. (T at 33-35, 42, 45-46). Plaintiff testified that he can stand or walk for thirty to sixty minutes. (T at 35-36). He can drive for five hours a few times per year, but needs to take frequent breaks. (T at 36). Plaintiff indicated that he could lift up to 50 pounds occasionally. (T at 38). Plaintiff testified that he experiences anxiety and panic attacks. (T at 44).

The ALJ also received testimony from Christina Boyea, a friend of Plaintiff. Ms. Boyea testified that she helps Plaintiff maintain his apartment and drives him to medical appointments. (T at 46). She indicated that Plaintiff's condition had "definitely gotten

15

worse," that he was "very depressed" and constantly in pain (T at 49).  Testimony was also received from a second friend, Linda Jumper.  Ms. Jumper's testimony was consistent with Ms. Boyea's, in that she indicated that she helps Plaintiff with housework and that Plaintiff's pain is severe. (T at 51).  She also described Plaintiff as experiencing anxiety and panic attacks. (T at 52-53).

The ALJ's credibility assessment was extremely brief and conclusory.  He found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (T at 15).  However, the ALJ only found that "there are no opinions or medical evidence that claimant could not work simple sedentary work." (T at 15).

The ALJ's credibility determination was not supported by substantial evidence and must be revisited on remand.  The ALJ made no mention of the testimony provided by Ms. Boyea and Ms. Jumper, which supported Plaintiff's allegations.   Further, and more importantly, the ALJ did not reconcile his conclusion that there were "no opinions or medical evidence" that Plaintiff could not perform sedentary work with Dr. Magurno's report (which assessed several functional limitations consistent with Plaintiff's allegations) or Dr. Moore's opinion (which included concerns about maintaining attention and impulse control, which were also consistent with Plaintiff's testimony).  Plaintiff's credibility should accordingly be revisited on remand, with the ALJ affording careful consideration to all of the evidence and reassessing Plaintiff's allegations in that light.

c.    **Failure to Consult a Vocational Expert**

At step 5 in the sequential evaluation, the ALJ was required to perform a two part

process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

17

education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ used the Grids in reaching his disability determination. Specifically, the ALJ concluded that, prior to May 22, 2010, a finding of "not disabled" was directed under the framework provided by Medical-Vocational Rule 201.21. Although the ALJ concluded that Plaintiff's ability to perform substantially all of the requirements of sedentary work was impeded by additional limitations (including his non-exertional limitations, which limited Plaintiff to simple, unskilled work), he found that these additional limitations "had little or no effect on the occupational base of unskilled sedentary work." (T at 16). As such, the ALJ applied the "framework" of Medical-Vocational Rule 201.21 and concluded that Plaintiff was not disabled prior to May 22, 2010. (T at 16).

However, the ALJ's application of the framework was based upon his assessment of Plaintiff's RFC (i.e. his conclusion that Plaintiff could perform sedentary work with some limitations). For the reasons stated above, the RFC determination was flawed and must be revisited on remand. Accordingly, the step five analysis will likewise need to be revisited.

Moreover, where, as here, nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

If a claimant's work capacity is significantly diminished by non-exertional

impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Here, the ALJ's reliance on the Grid framework (and decision not to consult a vocational expert) was based upon the conclusion that Plaintiff's non-exertional impairments caused "little or no effect on the occupational base of unskilled sedentary work." (T at 16).  However, as discussed above, the ALJ afforded "substantial weight" to the opinion of Dr. Moore, but did not reconcile Dr. Moore's opinion (which indicated limitations concerning Plaintiff's ability to perform basic work activities on a sustained basis)[5] with his conclusion that Plaintiff's non-exertional limitations imposed little or no effect on the occupational base of unskilled sedentary work.  This conflict should be resolved on remand, with it appearing that consultation with a vocational expert is warranted.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405

---

[5]As noted above, Dr. Moore found that Plaintiff's ability to maintain attention and concentration was impaired and appeared to be "impulsive in nature," which Dr. Moore found could "cause problems sometimes in relating adequately with others as well, making appropriate work schedule [sic], and maintaining a regular work schedule." (T at 147). See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999)(noting that an RFC determination requires an assessment as to the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the . . . assessment must include a discussion of the individual's abilities on that basis." . . . "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

(g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim."  <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


Dated:   August 10, 2012

Syracuse, New York

20

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

21

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge